Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2183 | **DATE** | 8/21/2003 |
| **CASE TITLE** | Congress Financial Corp. vs. Tad Ballantyne, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendants motion to stay (8-1) plaintiff Congress Financial Corporation's complaint pending the outcome of a concurrent action in the Bankruptcy court for the Northern District of Texas is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 22 2003 | |
| | Notified counsel by telephone. | | date docketed | 15 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | 8/21/2003 | |
| GL | courtroom deputy's initials | 03 AUG 21 PM 2:21 | date mailed notice GL mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
**AUG 2 2 2003**

CONGRESS FINANCIAL CORPORATION )
(CENTRAL) )
  )
            Plaintiff, )
  )
  v. ) Case No. 03 C 2183
  )
TAD BALLANTYNE and JEFF RENZONI, )
  )
            Defendants. )
_____)
  )
TAD BALLANTYNE and JEFF RENZONI, )
  )
  )
            Counter-Plaintiffs, )
  )
  v. )
  )
CONGRESS FINANCIAL CORPORATION )
(CENTRAL) )
            Counter-Defendant. )
  )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is the motion of Defendants Tad Ballantyne ("Ballantyne") and Jeff Renzoni ("Renzoni") to stay Plaintiff Congress Financial Corporation's ("Congress Financial") complaint pending the outcome of a concurrent action in the Bankruptcy Court for the Northern District of Texas. For the reasons set forth below, we deny Defendants' motion.

1

/5

## I. BACKGROUND

Congress Financial first loaned money to Defendants Ballantyne and Renzoni when they owned and operated Racine Steel ("Racine"). On or about August 9, 2001, Congress Financial and Texas Steel Partners, Inc. ("TSPI") entered into a Loan Security agreement which provided TSPI with a $1,000,000 Term Loan and access to a $7,000,000 Revolving Operating Loan. These two loans were secured by liens on TSPI assets. In connection with the Loan Agreement, Ballantyne and Renzoni, as owners of TSPI, each guaranteed payments of up to $500,000 of their obligation to Congress Financial (the "Guaranteed Payments" or the "Guarantees").[1] The Guarantees entered into by Ballantyne, Renzoni and Congress Financial provided that "the liability of the Guarantor for the entire Guaranteed Obligations shall mature and become immediately due and payable, even if the liability of the Borrower or any other obligor does not, upon the occurrence of any act, condition or event which constitutes an Event of Default as such term is defined in the Loan Agreement." Plain. Ex. A ¶ (2)(c)(4). According to the Loan Agreement, an "Event of Default" occurs when, *inter alia*, "a case or proceeding under the bankruptcy laws of the United States of American ... is filed by Borrower or any Obligor." Plain. Ex. C, §10.1(h).

Racine began to experience financial difficulties, prompting Congress Financial to fear that it would suffer approximately $2.3 million in losses from the Racine debt. To offset this loss, Congress Financial insisted that the loan obligation be shifted from Racine to TSPI. Thus, on

---

[1]The language of the Guarantee provides that the "Guarantor absolutely and unconditionally guarantees and agrees to be liable for the full and indefeasible payment and performance when due of the following ... (i) all obligations, liabilities and indebtedness of any kind, nature and description of Borrower to Lender ... whether arising before, during or after the initial or any renewal term of the Loan Agreement or after the commencement of any case with respect to the Borrower under the United States Bankruptcy Code." Plain. Ex. A ¶1(a).

September 17, 2002, TSPI and Congress Financial amended the August 2001 Loan Agreement to reflect that TSPI owed Congress Financial an additional $2,300,545.90. This amount was backdated to September 1, 2002. After assuming the Racine debt, TSPI experienced greater financial difficulties. On December 2, 2002, TSPI filed a Chapter 11 petition in the Bankruptcy Court for the Northern District of Texas (*In re Texas Steel Partners*, 02-49573-BJH) (the "Bankruptcy Proceeding"). The Bankruptcy Proceeding has since been converted to a Chapter 7 liquidation.

On March 6, 2003, Congress Financial sent demand letters to each Defendant, seeking payment of the two $500,000 Guaranteed Payments. To date, Defendants have not made any payments. On March 27, 2003, Congress Financial filed suit before this Court seeking to enforce Defendant's payment of the two guaranteed payments. Currently before us is Defendants' motion to stay this proceeding pending the conclusion of the bankruptcy proceeding. For the reasons set forth below, we deny Defendants' motion.

## II. ANALYSIS

Defendants set forth three reasons for their motion to stay: equitable estoppel, a stay under the Bankruptcy Code, and judicial economy. We are not persuaded by any of these arguments and therefore deny Defendants' motion to stay.

Defendants' first argument is that "notions of [equitable] estoppel ... favor a stay pending complete resolution of the [B]ankruptcy [P]roceeding." In support of this argument, Defendants contend that Congress Financial, "through a host of actions, misrepresentations and omissions orchestrated and insisted that Texas Steel Partners file for Chapter 11 bankruptcy protection." Def. Mot. To Stay. Defendants claim that Congress Financial encouraged TSPI to file for bankruptcy so that the Defendants' personal guarantees would be triggered. Defendants further

3

allege that the transfer of the Racine debt to TSPI was fraudulent because it was meant to ensure and induce TSPI into filing for bankruptcy. *See* Def. Reply in Support of Mot. To Stay.

Defendants' argument and allegations do not support a finding that Congress Financial should be equitably estopped from pursuing the instant action. The doctrine of "equitable estoppel allows delay in suing when defendant has taken steps to prevent plaintiff from suing in time." *Flight Attendants Against UAL Offset v. C.I.R.*, 165 F.3d 572, 575 (7th Cir. 1999). The elements of equitable estoppel are "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *LaBonte v. United States*, 223 F.3d 1049, 1054 (7th Cir. 2000) (citing *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992)). Defendants have not established the elements necessary for equitable estoppel. Defendants' general and vague statements that Congress Financial made "misrepresentations" and "insisted" that TSPI file for bankruptcy are entirely lacking in specificity and evidentiary support. Defendants' allegation that "[i]mplied within Congress's representations [that through Chapter 11 bankruptcy TSPI would be able to obtain work-out financing, attract additional equity investment and quickly come out of bankruptcy] was that it would not use the occasion of bankruptcy as a basis to collect on personal guarantees made by Renzoni and Ballantyne," is entirely without merit. There is no evidence that Congress Financial directly or indirectly implied that it would not use the event of default to collect the personal guarantees. We therefore deny defendants' motion for a stay based on equitable estoppel.

In its next argument, Defendants essentially contend that this action should be stayed because of the pending bankruptcy proceeding. Defendants put forth two reasons in support of this argument. First, Defendants contend that "the pending bankruptcy clearly implicates the rights of the same

parties that are in this proceeding." Second, Defendants maintain that the bankruptcy proceedings will provide Congress Financial with an adequate remedy, making the instant action superfluous. Defendants' arguments simply do not comport with the provisions of the Bankruptcy Code. Under 11 U.S.C. §362, a petition for bankruptcy stays, *inter alia*, "any act to obtain possession of property of the estate or of property from the estate or to control property of the estate." Under the Bankruptcy Code, "property of the estate" includes "all legal or equitable interests of the debtor." Bankr.Code, 11 U.S.C. § 541(a)(1). When a bankruptcy petition is filed, virtually all property of the debtor at that time becomes property of the bankruptcy estate. *See Matter of Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993). Even under this broad definition of "property of the estate," *see United States v. Whiting Pools*, 462 U.S. 198, 204-05 (1983), the personal assets of Renzoni and Ballantyne cannot be considered the assets of the debtor, TSPI.

Moreover, although the automatic stay provisions of §362 apply to any action against TSPI, they do not apply to Renzoni and Ballantyne personally. "The stay ... protects only the debtor, unless the debtor and some third party have such a similarity of interests that failure to protect the third party will mean that the assets of the debtor itself will fall into jeopardy." *See Fox Valley Const. Workers Fringe Ben. Funds v. Pride of Fox Masonry and Expert Restorations*, 140 F.3d 661, 666 (7th Cir. 1998) (holding that an attorney who worked for a bankrupt company was not protected under the automatic stay because the attorney had no financial or ownership relationship with the business). Because TSPI, not Renzoni and Ballantyne, is the debtor, the Defendants are not protected under §362 unless a failure to stay this case will put the assets of TSPI into jeopardy. There is no evidence that payment by Renzoni and Ballantyne of their personal guarantees would

5

in any way affect the assets of TSPI. We therefore conclude that Defendants are not entitled to a stay under the Bankruptcy Code.[2]

## III. CONCLUSION

For the foregoing reasons, we deny Defendant's motion. It is so ordered.

Marvin E. Aspen
District Court Judge

Dated: 8/21/03

---

[2]Defendants also argue that a stay of the instant action would promote judicial economy. Although we do not doubt that a stay might preserve judicial resources, this rationale alone is an insufficient basis upon which to grant Defendants' motion.